# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:14-cv-320-FDW

| | |
|---|---|
| JONATHAN JAMES NEWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SUSAN R. WHITE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Supplemental Amended Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 21). See 28 U.S.C. §§ 1915(e)(2); 1915A. Also pending before the Court is Plaintiff's "Motion for Reconsideration for Special Pleading to Amend Supplemental TRO/P. Injunction," (Doc. No. 27).

## I. BACKGROUND

On December 16, 2014, pro se Plaintiff Jonathan James Newell, a state court inmate currently incarcerated at Mountain View Correctional Institution ("Mountain View"), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff has named the following persons as Defendants: Susan White, identified as the Superintendent of Alexander Correctional Institution; Jackie Huggins, identified as a Unit Manager at Mountain View; and Lynn B. Ollis, identified as a Mail Room Clerk at Mountain View. (Doc. No. 1). Plaintiff filed a Supplemental Amended Complaint on March 2, 2015. (Doc. No. 21). North Carolina Department of Public Safety records show that Plaintiff was convicted in Guilford County, North Carolina, on October 29, 2008, of first-degree murder and was sentenced to life in prison.

Plaintiff alleges that he was transferred to Mountain View on or around September 24,

1

2013, and he identifies himself as a "mental health outpatient inmate" who has been diagnosed with "schizotopal personality disorder, personality disorder, . . . attention deficit disorder and allied disorders." (Doc. No. 21 at 3). Plaintiff alleges that between his arrival at Mountain View and October 22, 2013, Defendant Ollis made "harsh statements [towards Plaintiff] on record, in writing, about frivolous write-ups, related to mail procedures." (Id.). Plaintiff alleges that during the first week of October 2013, he "attempted to seek conversion" for some of his legal property "that went missing in transit between Johnston and Maury Correctional." (Id.). In the second week of October 2013, Plaintiff met with Cindy Haynes, who informed Plaintiff that Defendant Susan White instructed Haynes to investigate Plaintiff's missing legal files. (Id. at 4). The next day Haynes informed Plaintiff that officials at Johnston and Maury had no knowledge about Plaintiff's missing legal files, and there was nothing more that she could do to help him find the missing legal files. (Id. at 5).

Plaintiff alleges that he had a verbal altercation with Defendant Ollis on October 22, 2013, while he was trying to receive some of his mail. (Id.). Plaintiff alleges that Defendants White and Huggins were present during the altercation.[1] (Id. at 6-8). According to Plaintiff, he lost his temper after Ollis told him that his incoming mail was being denied because another inmate had written to Plaintiff, which was prohibited. (Id. at 6-9). Plaintiff alleges that during the altercation, Defendant Ollis shoved a book in Plaintiff's face and threatened him with a frivolous write-up. (Id. at 7). Plaintiff alleges that he was subsequently charged with a disciplinary infraction and taken to "cool down" for the next nine hours. (Id. at 10). Plaintiff alleges that he was thereafter "charged and convicted . . . with [45] days of segregation back log,

---

[1] Plaintiff alleges that Defendant Susan White, the Superintendent of Alexander Correctional Institution, was visiting Mountain View on the day of the altercation.

canteen restriction, telephone restriction, extra duty and two charges of $10.00 for the October 22, 2013 incident." (Id. at 17).

Plaintiff alleges that on the same day of the altercation, Defendants took some of his property, including legal files, from a secured locker that was in his cell. Plaintiff alleges that the property had been "removed from my locker without my knowledge nor a deprivation hearing as to why they needed my criminal matter legal information needed to file and submit a motion for appropriate relief to amend and reconsider within a timely fashion." (Id. at 11). Plaintiff alleges that the property was returned to him the next day. (Id. at 10; 16). Plaintiff alleges that when he asked another officer how Defendants got into his locker, the officer "stated they used my key they removed from me in segregation." (Id. at 11). Plaintiff alleges that Defendant Huggins specifically returned his legal files to him, and that "she refused to tell me why she seized my legal files." (Id. at 16). Plaintiff alleges that, about a month later in mid-November, Defendant Ollis called him to legal mail, where she told Plaintiff that "the Correspondence Review Committee stated the letter [he had received October 22, 2013] was from an inmate and it was denied." (Id.). Defendant Ollis told Plaintiff "to send it home and I'll get a write up or to have them destroy it and they won't write me up." (Id.). Plaintiff alleges that he agreed to what Ollis requested and the evidence was destroyed. (Id. at 17). Plaintiff alleges that in December 2013, Loris Sutton, Chairperson of the Correspondence Review Committee, sent Plaintiff a letter "notifying me that the correspondence from October 22, 2013, was denied due to a policy of no third party contact, which is not in policy. There was no mention of it being due to an inmate writing me." (Id.).

Based on the above factual allegations, Plaintiff alleges that "Defendant Lynn B. Ollis or Defendant Jackie Huggins, or Susan R. White or all three defendants willfully or recklessly or

3

negligently denied due process of mail and due process of a deprivation hearing prior to or after seizure [of] mail and also secured legal material in a locked locker." (Id.). Plaintiff further alleges that Defendant Ollis "did abuse her authority with communicated threats of frivolous write-ups, thus injured with an abuse of power resulting in an assault . . . , including smacking Plaintiff with a book . . . ." (Id. at 18). Plaintiff alleges that Defendants "failed to provide his due process and caused a delay in his timely refile to amend and reconsider, criminal postconviction," which resulted in Plaintiff being "written up and charged two ten dollar fines by actions of state employees goading the plaintiff." (Id. at 19). Plaintiff alleges that "[a]s a result plaintiff had a shock to the conscience that which the average inmate doesn't have to endure, thus violating Plaintiff's right to equal protection under the Fourteenth Amendment" and his right to be free from cruel and unusual punishment under the Eighth Amendment. See (Id.). Plaintiff further alleges that Defendants deprived him "of his First Amendment right to court access to file post conviction [sic] to have the burden of his life sentence removed. Moreover for a realistic release date is denied in atypical methods of abusive actions to further violate equal protections and due process covered by the fourteenth amendment." (Id.). Furthermore, Plaintiff appears to be attempting to bring state law claims of negligence, assault, battery, and intentional infliction of emotional distress against Defendants. Plaintiff seeks various forms of declaratory and injunctive relief, as well as compensatory and punitive damages. (Id. at 20-22).

**II.     STANDARD OF REVIEW**

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

### III. DISCUSSION

As noted, Plaintiff purports to bring claims for violations of his First Amendment right to receive mail and access to the courts, his due process rights, and his Eight Amendment right to be free from cruel and unusual punishment. He also may be attempting to bring a claim of a violation of his equal protection rights under the Fourteenth Amendment. For the following reasons, Plaintiff fails to state a claim for a violation of any federal right.

First, to state a claim pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, a plaintiff first must demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)). Plaintiff fails to allege any facts showing that he was treated differently from others with whom he was similarly situated, nor has he alleged any facts tending to show that Defendants participated in any purposeful discrimination. Thus, Plaintiff fails to state a Fourteenth Amendment Equal

5

Protection claim.

Next, as to Plaintiff's claim of a violation of his First Amendment right to access to the courts, in <u>Bounds v. Smith</u>, the Supreme Court held that the right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. <u>See id.</u> at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. <u>See id.</u> A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his <u>Bounds</u> claim." <u>Alvarez v. Hill</u>, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting <u>Casey</u>, 518 U.S. at 353).

Here, at most, Plaintiff alleges that Defendants gained access to a locker in Plaintiff's cell and removed items, including his legal files, from the locker for a single day while Plaintiff was being held in segregation. By Plaintiff's own allegations, however, his property was returned to him one day after it was taken from his cell. Moreover, Plaintiff's state court conviction was in 2008; thus, he has had years in which to file post-conviction motions for relief, and he fails to show how Defendants' conduct prevented him from meeting a filing deadline, or otherwise deprived him of the right to file any non-frivolous post-conviction motions. <u>Accord</u> <u>Garcia v. Lawrence</u>, 118 F. App'x 436, 439 (10th Cir. 2004) ("A single instance of removal of his legal materials for a few hours does not constitute a deprivation of [plaintiff's] right of access to the

6

courts."). In sum, Plaintiff's allegations simply do not state a claim for a First Amendment violation based on denial of access to the courts.

Plaintiff also does not allege any facts showing that he was subjected to any conditions of confinement that would rise to the level of an Eighth Amendment violation. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Rather, extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also generally allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Plaintiff simply does not allege any facts in the Supplemental Amended Complaint showing that he was denied the minimal civilized measure of life's necessities sufficiently grave to form the basis of an Eighth Amendment violation. Although Plaintiff alleges that he was wrongly placed in segregation following the altercation with Defendant Ollis, "[m]erely being placed in disciplinary custody does not violate the Eighth Amendment." Davenport v. Kneal, Civil No. 1:09-cv-01694, 2010 WL 2635819, at *11 (M.D. Pa. Apr. 22, 2010).

Next, to the extent that Plaintiff purports to bring a due process claim under the Fifth

7

Amendment, to establish a claim under the Fifth Amendment Due Process Clause, a litigant must show that the government deprived him of a liberty or property interest without providing notice and a meaningful opportunity to be heard. See Mathews v. Eldridge, 424 U.S. 319, 348 (1976). Here, even assuming that Plaintiff had a constitutionally protected interest in not having his property temporarily removed from his cell, his due process claim fails because he has an adequate post-deprivation remedy in state tort law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (stating that intentional deprivations of property do not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) ("Under North Carolina law, an action for conversion will lie against a public official who by an unauthorized act wrongfully deprives an owner of his property.").

Nor does Plaintiff state a claim for violation of any federal right based on Defendants' refusal to allow him to receive a letter that another inmate had purportedly written to him. While prisoners and detainees have some First Amendment rights in both receiving and sending mail, prison officials may place reasonable restrictions on these rights. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). Prison regulations and practices relating to the regulation of incoming mail are analyzed under a reasonableness standard as set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Under that standard, a prison action is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. Plaintiff fails to state a claim for a violation of his First Amendment right to receive mail based on the fact that the prison denied him the right to receive a single letter that was determined by the Correspondence Review Committee to be against prison policy.

Finally, the Court finds that, to the extent Plaintiff purports to bring state law claims against Defendants, such as negligence, assault, and intentional infliction of emotional distress,

the Court declines to exercise supplemental jurisdiction over those claims, and the Court will, therefore, dismiss Plaintiff's state law claims without prejudice. See 28 U.S.C. § 1367(c).

For the reasons stated herein, the Court finds that Plaintiff has failed to state a claim of a violation of any federal right against Defendants.

**IV. CONCLUSION**

For the reasons stated herein, Plaintiff's Complaint is dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Supplemental Amended Complaint, (Doc. No. 21), is **DISMISSED** for failure to state a claim. Plaintiff's state law claims are dismissed without prejudice.

2. Plaintiff's "Motion for Reconsideration for Special Pleading to Amend Supplemental TRO/P. Injunction," (Doc. No. 27), is **DENIED** as moot.

3. The Clerk is directed to terminate this action.

_____
Frank D. Whitney
Chief United States District Judge